This morning is 25-6046 Simmons v. Shobert and you're splitting arguments. Okay, Ms. Faulkner. Are you ready for me to speak? You may proceed. I'm sorry. You may proceed. Good morning, Your Honors. I am Stacey Hawes Faulkner and I represent Appellant Claude Shobert, who is a retired Oklahoma City Police Detective. I will be splitting my time with Katie Goff, who represents the City of Oklahoma City. This case arises out of a December 30th, 1974 murder during the robbery of a liquor store in Edmond, Oklahoma. A store clerk was killed during the robbery and customer Belinda Brown was shot in the head but survived and later testified against Mr. Simmons. The robbery and murder occurred in Edmond, not in Oklahoma City, and was investigated by the Edmond Police Department. Oklahoma City Detective Shobert's involvement in the case was, at most, setting up two lineups at the Oklahoma City Police Department on February 7th and February 8th, according to the summary judgment order page 2. Shobert filled out a form documenting the February 8th lineup, which indicates Ms. Brown identified Simmons and it is undisputed that he provided this report that he wrote to Edmond Detective Anthony Garrett. Detective Shobert never talked to the prosecutors about this case and was not asked to testify at either the preliminary hearing or the trial. Is that in the order? What you just said, that he never, he was never asked to testify and never talked to the prosecutors? That is not in the order. That is what he testified in his deposition. Okay. And the reason I ask is this is a very short order and basically your first two sentences encapsulated all of the facts announced by the district court. Yes, Your Honor. Then that, I think, is the problem in this case. Ms. Brown testified at both the preliminary hearing and the trial that she recognized Simmons from the night of the murder and that she had identified him in two lineups. She has never recanted this identification and has never testified she was coerced or encouraged or told by Shobert or Garrett to identify Simmons. Okay, let me ask you a question. So we're talking about more facts generally. We don't, we don't talk about facts that aren't in the district court's order. And so you would need a basis to argue about facts to, to go on, you know. And I think the basis here is what you discussed in Works versus Buyers that there's three reasons you can look at. You may review the factual record de novo when the district court fails to identify the particular conduct of the alleged constitutional violation, which I think we clearly have here since he didn't talk about the individual constitutional violations. He didn't talk about the facts related to each one. And then also the district court committed legal error on the way to a factual determination. And I think we also have that here because our, Shobert's position is that you should review the factual record de novo because the district court incorrectly placed the burden of proof on him when determining whether Brown was coerced, whether her testimony was coerced. And in, in Works you said that by shifting the burden to Buyers or by, to the defendant, that is legal error in route to a factual determination. Well, how do we know that the district court shifted the burden? The district court just said all the facts are disputed. A jury's got to decide it. Done. Well, I think then if you don't think that, if you don't accept that, then I think you back, go back to the first statement that the district court failed to identify the particular conduct of the alleged constitutional violations. I think it would have had to say a jury could find, Shobert did X, Y, and Z before, before it could go on to whether those constituted a constitutional violation. And the district court made no findings as to what a jury could find. Well, then maybe it should be sent back to the district court to make that determination. Well, I think with Risa Leaf, to what respect this court should grant, you have two options. You can conduct the cumbersome review of the record, which you talk, which the court has talked about in Estate versus Val Verde and Phillips versus Kruger. You can conduct the cumbersome review of the record that the district court failed to conduct and determine what facts a reasonable jury could find, and then, about Shobert's actions, and then determine if those actions violate clearly established law. And that's what you want this panel to do. I would like, I think that that is what the court should do, because the, you can go through, all the facts are in the record, even though they're not in the district court order. And I think when you go through those facts and how little involvement Shobert has, it will be clear that he is entitled to qualified immunity on each of these claims. So you would have us, I think, your alternate route is to remand the case to the district court to perform the analysis it should have performed before and actually address the issue of clearly established law. And this is the approach the court took in Ellis. I mean the district court didn't, didn't address either prong. That's true, the district court, here we have a case where the district court did not address either prong. And what the court should not do, as the Cox versus Glanz makes clear, is simply accept Simmons' argument that because the district court did not address qualified immunity, this court has no jurisdiction to review the case in an interlocutory appeal. And this court, it's true, the court tacitly adjudicated Shobert's qualified immunity defense because it didn't rule in his favor, it simply ruled nothing. But Cox specifically criticized this approach because the availability of the qualified immunity defense, which has the share, spare a public official the burdens of trial, should not turn on whether the district court addresses the defense or fails to do so. If a district court can effectively deny qualified immunity and preclude interlocutory review of the denial by simply refusing to address the issue, then the protection of the qualified immunity defense is intended to provide becomes illusory. And Simmons repeatedly argues that the court should decline jurisdiction because Shobert is refusing to accept the facts found by the district court. But the problem with this argument is that the district court essentially did not make any factual findings as you have stated. And it found that Shobert contacted Garrett about setting up a lineup on February 6th, conducted two lineups on February 7th and 8th, documented the February 8th lineup and gave that to report to Garrett, and his last reported involvement in the case was February 10th when Garrett went to OCPD to pick up other reports. Any actions purportedly taken by Shobert after February 10th or even on February 7th or 8th outside of the lineups himself are based on nothing but supposition and speculation. If we if we do our de novo review, we're gonna have to evaluate whether there's clearly established law that would, you know, let's just assume for sake of argument we thought there was a constitutional violation plausibly alleged or supported by summary judgment. What's your position on clearly established law? My position is that the law is not clearly established on any of these claims. With respect to Brady, the most important factual finding that the district court made was that no one is able to confirm whether the documents in the current district attorney file for Simmons criminal case are the same documents that were in the file at the time of the original trial. I mean, Robert Milfeld, who was a prosecutor at trial, testified he didn't know, and Murdoch, who was a prosecutor at the preliminary hearing, said, I kind of think it was not there, but that's just supposition on my part. So this finding forecloses any claim on Brady because if no one can testify that was it was in the prosecutor's file, by definition nobody can testify it was not, and although the district court failed to address the elements of a Brady claim, at a bare minimum you would have to have a threshold determination that the allegedly suppressed evidence was not given to the prosecutor by the police. If you don't have that, then you don't have to go further and determine whether Detective Schobert knew the contents of Garrett's report, whether he had a duty to make sure the prosecutor received that report, whether it was reasonable for him to rely on his training and turn it over to the lead detective and assume it would get to the prosecutor. With respect to the fabrication claim, I think that this court has never found a fabrication claim as speculative as the one here. In Pierce, you had DNA evidence. In Bledsoe, you knew it was fabricated because there was testimony and a suicide note saying I sent an innocent man to prison and the police made me do it. Pierce and Bledsoe look at Pyle versus Kansas, but you also had the affidavit there from a witness who gave false testimony that he had been threatened, and we just don't have that here. I will now let Ms. Goff address municipal liability unless you have any other questions. May it please the court, Katie Goff for the City of Oklahoma City. I will start the city's argument with the threshold issue of pendant jurisdiction and then move more specifically into municipal liability. Based on your questioning of Ms. Felkner, I would concede to you that the city's case and the pendant jurisdiction over the city's case is absolutely dependent upon whether or not you review Detective Sjobert's case for qualified immunity and if you grant qualified immunity to Detective Sjobert. In the event that you review Detective Sjobert's case for qualified immunity and grant him qualified immunity based on a finding that there was no constitutional violation, I believe the case law is clear that in that instance you would in fact have pendant jurisdiction over the case against the city. If there is no constitutional violation, there cannot be a Manel claim because you cannot have a policy as a driving force behind a constitutional violation that does not exist. Those issues are inextricably intertwined. Where it becomes more tenuous, of course, is if you make a finding that Detective Sjobert is entitled to qualified immunity based on the law not being clearly established. In the event that that occurs, the city would posit that those matters are still coterminous with one another. They are bound by the same set of laws and the same set of facts. So the review that you would give to Detective Sjobert about whether or not the law is clearly established, those are the same facts in the same law that you would use to determine whether or not the city had a policy and everything that Manel tells us and its progeny tells us a policy can be that caused the constitutional violation. And moving specifically into municipal liability in that case, in the district court's order against the city of Oklahoma or related to the city of Oklahoma City's motion for summary judgment, the city has a similar argument to Detective Sjobert which is that there simply wasn't an analysis. However, for the defendant's city, the court did find that there is no evidence of what the city's policies and procedures were because there are no written manuals. He made a specific finding that there are no officers available to testify about what the city's policies and procedures were. And if you review the record for qualified immunity, you will find out that Detective Sjobert testified he was trained how to conduct lineups, he knew that he had to disclose exculpatory evidence under Brady, that this was a city of Edmond investigation, and that he knows that the city had policies and procedures, he just doesn't know what they are. In the event that a movement in a dispositive motion makes a finding that there, or makes a showing that there are no facts, as the city did in this case, as the district court found, the burden according to this court in the Schneider case is discharged from the moving party. The city made a showing there were no facts, thus there is no municipal liability. And with no facts, the plaintiff cannot carry his burden of proving any action by any policymaker, by any training officer. There simply is no evidence available in the record to support that case against the city, and the city would respectfully request that this court reverse the finding of the district court related to municipal liability. I would reserve the rest of my time for rebuttal for Ms. Felker, please. Thank you. Good morning, Your Honors. My name is Elizabeth Wong, and I represent the plaintiff, Glynn Simmons. Glynn Simmons spent over 48 years in prison for a crime of which he was absolutely innocent. He was found innocent by an Oklahoma court. He received a declaration of innocence in 2023. We filed this lawsuit shortly thereafter. The defendant's appeal in this case revolves entirely around its version of the facts. Whether they're arguing over whether we've provided sufficient evidence to show constitutional violation on Brady, on fabrication, on the Fourth Amendment claim, or whether they're arguing about whether the law was clearly established in 1975, that a police officer could not make up that a witness said that she identified our client when she actually identified two other individuals. That's not in the order, though. It's not in the order, but let me address the concern about the district court's order. The district court's orders were short. I think a charitable reading of them is that the defendants had not met their initial burden at Rule 56 to show there was no genuine dispute of material fact. But the way that this court does the analysis in a case like this is, first, we look at what is the universe of facts that the district court has identified as creating a dispute of material facts, and then the court can supplement that, as the panel in Cougar v. Phillips did, as the panel in Estate of Booker v. Gomez did, with a de novo review of the record to look at what are the facts that the district court likely assumed. Okay, so you agree that this is a proper case for a de novo review or a remand for the district court to expound on the proper universe of facts? It's up, it's, it's within your discretion to do either one, whether it's to remand, to have the district court spell out what exactly are the material disputes of, genuine disputes of material fact, or for you to conduct a de novo review. But let me be clear about what that de novo review, de novo review is. The de novo review is to look at the record and view the facts in the light most favorable to the plaintiff, and all reasonable inferences therefrom, to figure out what are the facts that the district court likely assumed in denying summary judgment on the basis of qualified immunity. And that is where the defendant, Schobert, and the city's argument fails, because all of their arguments, as we pointed out throughout our brief, depend on their version of the facts, not charitably viewing what the prosecutors testified, not crediting what Mr. Simmons testified about which lineup he was in, the fact that he was only in one lineup. What do we do with, I mean, okay, so fair enough, he says he was only in one lineup. He also, over time, has given conflicting versions of that. What do we do with that? So do we have to assume, do we have to view his, his conflicting statements charitably toward him, and say, well, we'll just go with the one that's best for him? Yes. Yes, you absolutely do. Okay, so he can conflict it, he can have his own conflicting testimony, and we, and we have to disregard the one that's inconvenient for him. You have to view all the facts in the light most favorable to him, but let me be clear what the record actually shows. He never previously testified. He was never asked before, under oath, about what lineup he was in. He did testify in his own defense at the criminal trial. He was not asked any questions about the lineup. He simply testified about his innocence and about his alibi and the fact that he was at a pool hall in Louisiana on the night of the robbery and the murder. That's what he testified at the original criminal trial. With respect to the 1997 habeas proceedings, there was no evidence you're hearing. There was no declaration or affidavit submitted from him, and the one thing that they point out is the briefing that was written by his attorneys in the, in the state post, in the state post-conviction, in the Oklahoma courts, and a note that he wrote to his attorney where he's talking about what the report shows. Now, Mr. Simmons' memory, both at the... If I could interrupt there and apologize, but there was also a federal habeas proceeding. I don't know what the answer to, but a panel of this court denied habeas relief on a actual innocence claim because it said there was no evidence that there was a Brady violation. What do we, what do we do about that? That has no collateral estoppel effect. The defendants have not argued, and they expressly, expressly disclaim in the reply brief, arguing that that has any collateral estoppel effect. That was known to the Oklahoma courts in 2022 and 2023 when Mr. Simmons litigated his state post-conviction, and the record here is different than the record that was before the court at that time, because again, there was no evidentiary hearing. There were no affidavits and no declarations, and most importantly, it's not just about Mr. Simmons' testimony today, but it is about the testimony of the two prosecutors that we have in this record today, and what those prosecutors state, and again, this conflicts with the defendant's position here in their briefing in an argument, Mr. Murdoch, the preliminary hearing prosecutor, testified at the appendix 1364 to 65 when he was asked, do you think that you had this report in 1975? And he said, I don't think so. The trial prosecutor, Mr. Milfeld, when he was asked in his deposition about whether or not he had the exculpatory lineup report, he talked about how he was shown it for the first time in the evidentiary hearing in the state post-conviction in 2022, and he said, I told the post-conviction attorney at that time, I don't think I've ever seen that before. Those statements have to be credited. So do those have to be credited as, in your view, as I've never seen that before? Or are they credited as, I don't know if I've ever seen that before. I mean, those are two very different things, aren't they? Well, let me be precise. I mean, from an evidentiary standpoint? Let me be precise. Mr. Murdoch's testimony was, he was asked the question in his deposition, and based on the preliminary hearing transcript and what you know and your knowledge of your own obligations to disclose Brady evidence at the time, you don't believe that you had a copy of the lineup report at the time of the preliminary hearing, right? Witness, I don't think so. That's at appendix 1364 to 65. I just heard, too. I mean, I get the testimony, and I don't know what the import of it is, I mean, yet, but I'm just, go ahead. I mean, I don't want to, it's not doing anyone any good for me to joust with you about facts, but I'm just trying to get a handle on how you think we have to view the evidence if it's unclear. I mean, what's clear is someone asked him if he believed he'd ever seen that, and he said, I don't think I've ever seen that. No. Both of those, the question, the question was hedged, and so was the answer, and I just don't know how we treat something like that. He was also asked a series of other questions, and earlier on, other pages of his deposition that we said in our response brief about whether or not he understood his Brady obligations at the time in 1975, whether he would have turned over this report, whether he thought, looking at it now, that the report was exculpatory, and let's not forget that the trial prosecutor, Mr. Milfeld, testified at the evidentiary hearing that he had an open file policy, and so there's no dispute that nobody ever made anything of the fact that Ms. Brown had actually identified number six in the lineups, which was not the position that Mr. Simmons was in. According to the case record, which is one of the two fabricated documents that Mr. Schobert gave to the prosecutors, according to that fabricated document, Mr. Simmons was in position two on both February 7th and February 8th of 1975 in those lineups. We now have a report which says that she actually identified number six and number blank, and that it was the same two on both days. A defense attorney clearly would have asked questions on cross-examination of Ms. Brown about the differences in her testimony. They tried at trial to impeach her credibility, to say that she wasn't sure, but they didn't have this crucial document, which showed that she identified somebody else entirely. I mean, you know, the question... Where did the report come from? Well, in... Go ahead. In the 1990s, Mr. Simmons finally got a an investigator to do some pro bono work for him, and he sent an open records request to the Edmond Police Department, and the Edmond Police Department produced it at that time. What about the city's claim that there was no fax to support the Monell claim? There's not been a single case in which this court has ever, in an appeal of a denial of qualified immunity of an officer, there's never been a single case in which this court has reached out to decide whether or not the city's policies or training were sufficient. And this case should not be the first one in which to do that. Now, there are some things that Ms. Goff said that I agree with, and many things that she said that I don't agree with. The fact is that in order for this court to exercise pendant jurisdiction, which is generally disfavored, over the city's appeal, you would have to find that there is no... We have not shown sufficient evidence to show constitutional violation on any of our theories. Brady, fabrication, unduly suggestive ID, the Fourth Amendment claim. You would have to find that there is no constitutional violation on any of them, because if there's a constitutional violation on any one of them, then it doesn't resolve the claim against the city. Now, if you decide... So they would have to win across the board on all of the... on the first prong of qualified immunity in order for you to reach out and decide the city's appeal. With respect to, you know, if you decide that there were some claims that were not clearly established at the time, which of course we contest, that would not resolve the city's appeal, because the city is not entitled to qualified immunity. With respect to the... So, you know, as we've stated, that I think, you know, it's within your discretion whether you want to remand to the district court or to decide the case here by reviewing the facts. I think that given the passage of time and given Mr. Simmons' current state of health, and given that the city is not asking the court to remand either, the... the... what we would urge this court to do is to look at the record with a view of viewing the facts in our favor and figuring out what facts the district court likely assumed. And, you know, the district court's opinion, while short, did say some things, which I think that the other side is not really... Don't we have to assume that the district court considered the entire factual record that the two parties presented to him? Yes. Yes, of course. And... and he clearly did. I mean, he... he... he noted what the... his opinion is short, but he did know what the claims were. He understood that we were asserting claims from under Brady, fabrication, unduly suggestive ID, the Fourth Amendment claim. He states in footnote 3, he acknowledges, in footnote 3 of his opinion, that the lineup report is the one that we say was exculpatory and never provided to the district attorney, although, you know, could have been phrased a little bit differently. I think that the charitable reading of that is that he was finding that the facts... the... a reasonable jury could find those facts in our favor. Another example of the district court's opinion saying... finding certain facts that you have to accept in the context of this appeal is finding that Sjobert testified at his deposition that he did not remember anything about this case. He did not remember any conversations with Garrett, anything about Mr. Simmons, anything about the lineups, the trial. He remembered absolutely nothing. And yet, at summary judgment, Sjobert submitted a nine-page declaration from his attorneys attempting to dispute his prior complete lack of memory of the case, because I think they realized that that was not helpful to them. That cannot be credited, and under the district court's opinion in footnote 9, that cannot be credited, because the district court disregarded that declaration. Okay, so in your view, in reviewing whatever Sjobert said, we would disregard the affidavit and basically say he knew nothing. That's correct. Okay. That's correct. With respect to whether the law was clearly established at the time, I think, you know, although the events of this case are probably older than many of the other cases that have come to this court in a wrongful conviction case, it was nevertheless clearly established in 1975 that a police officer could not make up evidence about who was identified in a lineup. A police officer in 1975, a reasonable police officer, would have known that you could not take information that he knew about who the witness identified and fail to give it to the prosecutor when it was completely different than what he wrote up in the case record. We also... Well, there's Pierce v. Gilchrist, which of course involved events from 1986, but it cited Mooney v. Holohan, which was decided in 1935. It also relied on Brady itself, which was decided in 1963. It relied on Pyle v. Kansas, which was decided in 1942. So, of course, the language of Pierce is phrased in terms of the events that you were looking at in that case, which occurred in 1986. You were relying on cases that were far, far older. And that is the same thing that courts around, circuit courts around the country, including the Sixth Circuit and the Jackson v. City of Cleveland, have found. So it's not only clearly established by the Supreme Court cases themselves, but it's also clearly established by this court's cases, and the weight of authority also supports our position. So do we have to, if there are documents that show that whatever Sjobert gave to whoever were inaccurate, do we have to assume that the inaccuracy was a fabrication, or does there have to be more? Well, the... I mean, if Simmons is saying he was only in one lineup, and he was not in the lineup on February 8th, and Sjobert writes down in the reports that Simmons was in this lineup, and Belinda Brown picked him out, that is necessarily false. The question of his intent... Well, that's a difference. I mean, it's not necessarily false. It's necessarily that two people are saying two different things, but we don't know why. And I guess my question is, in that regard, do we have to, to construe it in your favor, do we have to assume, do we have to presume it's false? Yes. Well, I mean, yes. I mean, for fabrication, you do have to show knowingly, recklessly, or intentionally, and I think that's the standard for both fabrication and Brady, but that's a jury question. The level of intent that a defendant has is a jury question, which, you know, the district court decided in our favor. True, true, but you don't get to generally go to a jury just by saying, it's false, jury, decide that it is. I don't have anything else to tell you about it. You have to provide evidence of falsity. Absolutely, and the corroborative evidence is the way that the Brady claim and the fabrication claim work together. So we know that not only did he write down something completely false, but we know that he also hid this lineup report, and let me back up. It's not just about what the lineup report itself, it's not just about the piece of paper, it is about his knowledge that Belinda Brown identified number six in both of the lineups, and that was not Glenn Simmons, and he kept that information to himself. He did not talk to the prosecutor, he did not disclose it to the prosecutor, and he didn't ensure that anybody else knew about that either. Okay. Thank you, counsel. Your time's expired. We have some rebuttal. With respect to your last question as to whether the report shows falsity, the problem here is that you cannot get from the declaration of innocence in the sense of, Ms. Brown was wrong, to Ms. Brown's testimony was fabricated by the detectives. They put on a witness that said, an expert witness at the evidentiary hearing, explaining all the reasons that her testimony or her identification could have been wrong, but that doesn't mean that it goes back to show that Schobert fabricated it. Thank you. I'll give you another minute if you have something else to say. Okay. I think we did credit what the prosecutor said, because they both said we don't know. Murdoch said it's a supposition that it wasn't in there, and Milfeld looked at, said at the evidentiary hearing, I've never seen this before, because they gave him three pages that were just that report, and then he looked at it in the context of what appears to be a DA file, and he said, I don't know if this was in the original file, but there's circumstantial evidence from the way it looks, from the hole-punching, and he said, and when I saw this and thought it was, it probably was in my file, I almost had a conniption. That's not really, I know it wasn't in the file, which is what you would need to get to Brady. Thank you. Thank you, counsel. The three of you are excused. The case is submitted.